UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ALEXIS GARCIA, ALVIN MALDONADO,
ANTONIO MONTIEL, DAVID TORRES,
GREVIL MARTINEZ, JOSUE MARTINEZ,
LUIS MIGUEL ZALDIVAR, LUIS SAMUEL
MARTINEZ, LUIS MARTINEZ ESCOTO,
STENFORD ANDREW MITCHELL, and
WANDY RAMIREZ,

      **REPORT AND
      RECOMMENDATION**
      22 CV 4356 (ARR) (CLP)

                Plaintiffs,
    -against-

PADIN DAY INTERIOR GROUP LLC, and
RAMIRO PADIN, individually,

                Defendants.
--------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

On July 25, 2022, plaintiffs Alexis Garcia, Alvin Maldonado, Antonio Montiel, David Torres ("Torres" or "plaintiff Torres"), Grevil Martinez, Josue Martinez, Luis Miguel Zaldivar, Luis Samuel Martinez, Luis Martinez Escoto, Stenford Andrew Mitchell, and Wandy Ramirez (collectively, "plaintiffs") commenced this action against defendants Ramiro Padin ("Padin") and Padin Day Interior Group LLC ("Padin Day") (collectively, "defendants"), alleging that defendants violated various provisions of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (Compl. ¶¶ 1–6).[1] On September 7, 2022, before defendants responded to the initial Complaint, plaintiffs filed their first Amended Complaint. (Am. Compl.[2])

Currently pending before this Court is plaintiffs' motion to file their Second Amended Complaint. For the reasons set forth below, it is respectfully recommended that plaintiffs' motion be denied without prejudice to renew.

---

[1] Citations to "Compl." refer to plaintiffs' Complaint, filed on July 25, 2022. (ECF No. 1).
[2] Citations to "Am. Compl." refer to the Amended Complaint, filed on September 7, 2022. (ECF No. 9).

1

FACTUAL AND PROCEDURAL BACKGROUND

Defendant Padin Day is a New Jersey entity allegedly owned by defendant Padin, with a principal place of business located at 184 Bank Street, Midland Park, N.J. 07432. (Am. Compl. ¶¶ 44–45, 48–49). Plaintiffs allege that they were employed by defendants as "carpenters and helpers" and were covered employees within the meaning of the FLSA and NYLL. (Id. ¶¶ 13, 16, 19, 22, 25, 28, 31, 34, 37, 40, 43, 54). According to plaintiffs, Padin Day is an employer who is subject to the FLSA because it is an "enterprise engaged in interstate commerce," with "(1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00." (Id. ¶¶ 46–47). Plaintiffs contend that defendant Padin is subject to the FLSA individually because he "exercises sufficient control over Padin [Day] to be considered the Plaintiffs' employer," "had the authority to hire and fire employees and establish and maintain policies regarding the pay practices at Padin [Day]," and "had substantial control over Plaintiffs' working conditions and practices." (Id. ¶¶ 50, 52–53). Plaintiffs also allege that both defendants are employers within the meaning of the NYLL. (Id. ¶¶ 52, 67).

Plaintiffs allege the following causes of action: (1) failure to pay earned wages in violation of the NYLL (Count 1) (id. ¶¶ 65–70); (2) failure to pay overtime wages in violation of the FLSA and NYLL (Counts 2 and 3) (id. ¶¶ 71–81); (3) failure to provide annual wage notices and wage statements in violation of the NYLL (Counts 4 and 5) (id. ¶¶ 82–89); (4) failure to reimburse equipment costs in violation of the FLSA and NYLL (Count 6). (Id. ¶¶ 90–91).

On November 10, 2022, the Clerk of the Court entered default against defendant Padin after he failed to respond to plaintiffs' First Amended Complaint. (ECF No. 18). On November

18, 2022, both defendants, with the consent of plaintiffs' counsel, filed a motion for Extension of Time to File an Answer, which was granted on the same day.  (ECF No. 21; Electronic Order, dated Nov. 18, 2022).  Defendants subsequently filed a letter on November 30, 2022, requesting a pre-motion conference, seeking to file a motion for summary judgment in lieu of an answer.[3]  (ECF No. 22).  Following a conference with the Honorable Allyne R. Ross on January 17, 2023, defendants filed an Answer on February 6, 2023.  (ECF Nos. 26–27, 29).

In their Answer, defendants denied plaintiffs' allegations and raised counterclaims against Torres individually, and filed third-party claims against Mr. Plaster, LLC ("Mr. Plaster") and Unity Construction Group, LLC ("Unity") (collectively, "third party defendants") (ECF No. 29).  (Ans.;[4] Third-Party Compl.[5]).[6]  Defendants allege that Torres owns Mr. Plaster, a New York limited liability company that "principally provid[es] outside labor services as [a] subcontractor for various construction related jobs," and that Unity is a New York limited liability company that "provides general contractors services throughout the state."  (Third-Party Compl. ¶¶ 9–12).  According to the Third-Party Complaint, in or about April 2021, Unity hired defendants to perform painting and trim services for a project at the Staten Island Country Club.  (Id. ¶ 14).  However, at the time, Padin Day was not a New York contractor, so it agreed to act as project manager and retained Mr. Plaster at Unity's recommendation for paint work.  (Id. ¶¶ 15–18).  Defendants claim that Mr. Plaster was paid for five weeks of work by check or by Zelle to

---

[3] The defendants later submitted another pre-motion letter on December 27, 2022, clarifying their arguments in support of their proposed motion for summary judgment, as Ordered by the Honorable Allyne R. Ross. (ECF No. 24; Electronic Order, dated Dec. 19, 2022).

[4] Citations to "Ans." refer to defendants' Answer to the First Amended Complaint, filed on February 6, 2023.  (ECF No. 29 at 1–16).

[5] Citations to "Third-Party Compl." refer to defendants' Counterclaims and Third-Party Complaint, filed on February 6, 2023.  (ECF No. 29 at 16–25).

[6] Defendants stipulated to dismiss the claims against Unity without prejudice, which the court granted on March 28, 2022.  (ECF Nos. 45–46).

Torres, in the total amount of $28,699.79.  (Id. ¶¶ 26–27).  They also reimbursed Mr. Plaster for an additional $300 for expenses.  (Id. ¶ 26).

However, in the beginning of July 2021, defendants discovered that Mr. Plaster had performed substandard work and broke some of defendants' equipment.  (Id. ¶¶ 30–32).  In response, defendants withheld five days' worth of payment "as retainage to repair."  (Id. ¶ 33; see also id. ¶ 37).  Upon being notified that Unity demanded the Mr. Plaster team be removed, that defendants would be withholding payment and would be hiring a new team to complete the work, Torres allegedly "promised/threatened retaliation" but did not take any legal action until "late September 2022."  (Id. ¶¶ 37–38, 40).

Defendants argue that they are entitled to bring and recover on counterclaims for (1) fraud, (2) negligent workmanship, and (3) indemnification.  (Id. ¶¶ 46–71).  As to fraud, defendants allege that Torres and Mr. Plaster "misrepresented that [Mr. Plaster] would perform pursuant to the [work] agreements between the parties" and that they "intended to fraudulently induce [defendants] into retaining [Mr. Plaster,] knowing that, if a dispute arose, [Mr. Plaster] would falsely allege that Torres and the other staff of Mr. Plaster were employees [of defendants] to falsely demand payment."  (Id. ¶ 48).[7]  Defendants contend that "Torres concocted this false narrative and filed this frivolous lawsuit" and that this lawsuit is "the result of Torres fulfilling [his] multiple threats to retaliate" and his efforts to "convince[] his employees/agents that they could be paid further amounts" if they joined the lawsuit.  (Id. ¶¶ 40–41, 50).

As to negligent workmanship, defendants allege that plaintiffs created a "duty" to "perform at the highest quality skill" by "[holding] themselves, and their crew, out to the public to be proficient and qualified labor[ers.]"  (Id. ¶¶ 53–54).  Defendants allege that plaintiffs

---

[7] Defendants purport to attach a copy of their work agreement with Torres and Mr. Plaster to their Third-Party Complaint as Exhibit A.  (Third-Party Compl. ¶ 20; ECF No. 29-1).

4

breached this duty by performing substandard work and by breaking defendants' spray-painting machine. (Id. ¶¶ 39, 55–56). Defendants claim that the breach caused them to suffer more than $20,000 in damages and they are entitled to recovery. (Id. ¶¶ 39, 57).

Defendants also bring an action for indemnification and a claim for declaratory relief, seeking, in part, a declaration that defendants are not plaintiffs' employer but that Torres and Mr. Plaster are plaintiffs' employers. (Id. ¶¶ 58–74). According to defendants, they were not plaintiffs' employers under the law because (1) they "did not hire individuals" and "had no knowledge" as to who Mr. Plaster hired to perform the paint work; (2) plaintiffs never accessed defendants' offices in New Jersey; (3) "[o]nly a few pieces" of defendants' equipment were used for the project; (4) Mr. Plaster was a subcontractor brought on for limited retention and could have been replaced by another labor firm or team if necessary; and (5) defendants did not supervise Mr. Plaster's work. (Id. ¶¶ 60–61, 63–69). Defendants argue that these allegations demonstrate a "lack of any privity" between the defendants and Mr. Plaster's staff such that defendants are "entitled to common law indemnity for the defense of this case." (Id. ¶ 71).

On February 13, 2023, shortly after defendants filed their Answer and Third-Party Complaint, plaintiffs sought leave to file a second amended complaint to add claims of unlawful retaliation in violation of the FLSA and NYLL.[8] (Pls.' Ltr.;[9] Second Am. Compl.[10] ¶¶ 106–17). In their Proposed Second Amended Complaint, plaintiffs allege that the facts underlying the counterclaims arose nearly two years ago. (Second Am. Compl. ¶ 62). Nonetheless, defendants did not threaten or actually sue Torres or the third-party defendants until the district court

---

[8] Plaintiffs initially filed their second amended complaint without leave of court, but later withdrew and filed the instant motion. (ECF Nos. 35–38).

[9] Citations to "Pls.' Ltr." refer to plaintiffs' letter in support of their motion to amend, filed February 13, 2023. (ECF No. 38).

[10] Citations to "Second Am. Compl." refer to plaintiffs' Proposed Second Amended Complaint, filed February 13, 2023. (ECF No. 38-1).

5

rejected defendants' attempt to move for summary judgment in lieu of answering. (Id. ¶¶ 63, 65, 67–69, 72). Plaintiffs contend that their decision to file a lawsuit against defendants is "protected activity" under the FLSA and NYLL, and that defendants only filed these counterclaims in bad faith for "'leverage' purposes" to retaliate against plaintiffs. (Id. ¶¶ 70–73). Plaintiffs assert that while the counterclaims are only filed against Torres and Mr. Plaster, they "negatively impact the ability of all Plaintiffs to obtain a recovery" by adding legal fees and creating tension between Torres and the other plaintiffs. (Id. ¶¶ 74–75). Plaintiffs therefore argue that defendants violated the FLSA and NYLL by initiating a counterlawsuit against plaintiffs "after they engaged in a protected activity." (Id. ¶¶ 108, 114). In a letter supporting their motion to amend, plaintiffs argue that the Court should grant these amendments because they were made in good faith and were not a dilatory tactic. (Pls.' Ltr. at 1).[11]

Defendants oppose the amendments on grounds of futility. (Defs.' Resp.[12] at 1). They argue that as part of an FLSA or NYLL retaliation claim, the moving party must show there was an adverse employment action taken and that plaintiffs cannot do so here. (Id. at 2–3). Defendants contend that their counterclaims, based on their argument that they are not plaintiffs' employers, do not constitute an adverse employment action. (Id. at 3). While defendants concede that baseless counterclaims can constitute an adverse employment action, they argue that plaintiffs still must prove such baseless counterclaims have "'some impact on the plaintiff's employment or prospective employment,'" such as plaintiffs' professional reputation. (Id. at 4 (quoting D'Amato v. Five Star Reporting, Inc., 80 F. Supp. 3d 395, 420 (E.D.N.Y. 2015))).

---

[11] On April 7, 2023, Torres and Mr. Plaster requested a premotion conference with the district court regarding their anticipated motion to dismiss several of the counterclaims. (ECF Nos. 48, 49). The Honorable Allyne Ross found that a premotion conference was not necessary but deferred setting a briefing schedule on the motion to dismiss pending a decision on the current motion to amend.

[12] Citations to "Defs.' Resp." refer to defendants' opposition to plaintiffs' motion to amend, filed March 8, 2023. (ECF No. 42).

Moreover, defendants argue that they "have an appropriate and absolutely necessary obligation" to raise counterclaims challenging the alleged employee-employer relationship and that their counterclaims "have legal and factual support." (Id. at 5). Additionally, defendants contend that plaintiffs "do not have standing or specifics to argue on behalf of only Mr. Torres to state that being sued for his wrongful conduct would deter them from bringing or joining this FLSA suit." (Id. at 6).

In reply, plaintiffs note that, for motions to amend, the Court does not need to rule on the merits of defendants' counterclaims or plaintiffs' new claims and need only determine whether plaintiffs' allegations are sufficient to allow amendment. (Pls.' Reply[13] at 2 (citing Flores v. Mamma Lombardis of Holbrook, Inc., 942 F. Supp. 2d 274, 279 (E.D.N.Y. 2013))). Plaintiffs argue that courts have found counterclaims to be sufficiently retaliatory based on their timing and amount in controversy. (Id. (citing Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 466–67 (S.D.N.Y. 2008)). They argue that they have sufficiently alleged that defendants' counterclaims are retaliatory here because defendants ask for "seemingly minimal" damages and sued only after the district court denied their motion to move for summary judgment. (Id.) Further, plaintiff argues that all plaintiffs have standing to bring these counterclaims, despite the fact that only Torres was named in the counterclaims, because the counterclaims impact all plaintiffs' ability to bring their case. (Id.)

## DISCUSSION

I.  Legal Standard under Federal Rules of Civil Procedure 15(a)(2)

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend "its complaint once as a matter of course within 21 days after serving the complaint or within 21 days after a

---

[13] Citations to "Pls.' Reply" refer to plaintiffs' reply to defendants' opposition, filed March 8, 2023. (ECF No. 43).

7

responsive pleading has been served." Blanchard v. Doe, No. 17 CV 6893, 2019 WL 2211079, at *3 (E.D.N.Y. May 22, 2019) (citing Fed. R. Civ. P. 15(a)(1)); Santagata v. Diaz, No. 17 CV 3053, 2019 WL 2164082, at *2 (E.D.N.Y. May 17, 2019). After that, amendments are allowed "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 expresses a strong presumption in favor of allowing amendment, stating that "[t]he court should freely give leave when justice so requires." Id. While courts have broad discretion in deciding whether to grant motions to amend, the Second Circuit has cautioned that an amendment should only be denied "'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" Bensch v. Estate of Umar, 2 F.4th 70, 81 (2d Cir. 2021) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)); see also Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962) and adding "repeated failure to cure deficiencies by amendments previously allowed" as an additional ground on which to deny a motion to amend).

II. Analysis

    A. Futility

Defendants object to the filing of the second amended complaint on grounds of futility. (Defs.' Resp. at 1).[14] Courts may deny motions to amend where the proposed amendment would be futile as a matter of law. Thea v. Kleinhandler, 807 F.3d 492, 496–97 (2d Cir. 2015). Such futility is established where the amendment "'would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" Id. (quoting IBEW Loc. Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015)) (internal quotations omitted); see also Perfect Pearl Co. v. Majestic

---

[14] As defendants only raise futility arguments when opposing the motion to amend (see generally, Defs.' Resp.), the Court does not address other grounds for denying a motion to amend such as prejudice or undue delay.

Pearl & Stone, Inc., 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012) (holding "[a] proposal to amend a complaint is futile if the proposed amended complaint would fail to state a claim upon which relief could be granted"). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." IBEW Loc. Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d at 389.

When assessing the futility of a proposed amendment, the Court "must limit itself to the allegations in the complaint, as well as to any documents attached to the complaint as exhibits or incorporated by reference." Max Impact, LLC v. Sherwood Grp., Inc., No. 09 CV 902, 2012 WL 3831535, at *4 (S.D.N.Y. Aug. 16, 2012). The Court must consider the complaint along with the proposed amendments and "accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement of relief." Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012) (citing Starr v. Sony BMG Music Entm't., 592 F.3d 314, 323 n.3 (2d Cir. 2010), and Ashcroft v. Iqbal, 556 U.S. 662, 678–80 (2009)); see also Debrosse v. City of New York, No. 13 CV 3822, 2016 WL 3647589, at *2 (E.D.N.Y. May 25, 2016), report and recommendation adopted, 2016 WL 3647590 (E.D.N.Y. June 30, 2016).

In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, the Supreme Court clarified the pleading standards under which courts are to evaluate a motion to dismiss, "arguably shift[ing] pleading standards from 'simple notice pleading' to a 'more heightened form of pleading.'" Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 214 (S.D.N.Y. 2010) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). Now, when deciding a Rule 12(b)(6) motion to dismiss, courts should consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that

9

is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556); see also Hayden v. Paterson, 594 F.3d 150, 160–61 (2d Cir. 2010).

Under this heightened pleading standard, "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555). Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. However, "'plausibility'" does not rise to the level of "'probability'" but instead requires "'more than a sheer possibility that a defendant has acted unlawfully.'" Hayden v. Paterson, 594 F.3d at 161 (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

Thus, in deciding a motion to amend that is challenged on grounds of futility, the Court considers whether the newly added claims contain sufficient factual allegations to state a plausible claim for relief. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982)). Ultimately, when the well-pleaded facts allow no more than an inference of a "mere possibility of misconduct" and plaintiff has only alleged, rather than shown, an entitlement to relief, the federal pleading standard has not been satisfied. Ashcroft v. Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

B. Retaliation Under the FLSA and NYLL

Section 215(a)(3) of the FLSA makes it unlawful for employers "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceedings under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). To establish a prima facie case of retaliation under the FLSA, a plaintiff must allege that "(1) he participated in a protected activity, such as filing a FLSA lawsuit, (2) defendant took an adverse employment action against plaintiff, and (3) the protected activity caused the adverse employment action." Pawlowski v. Kitchen Expressions Inc., No. 17 CV 2943, 2017 WL 10259773, at *4 (E.D.N.Y. Dec. 15, 2017) (citing Mullins v. City of New York., 626 F.3d 47, 53 (2d Cir. 2010)). The same standard applies to show unlawful retaliation under the NYLL. Rodriguez v. National Golf Links of Am., No. 19 CV 7052, 2020 WL 3051559, at *2 (E.D.N.Y. June 8, 2020) (citing Santi v. Hot in Here, Inc., No. 18 CV 3028, 2019 WL 290145, at *4 (S.D.N.Y. Jan. 22, 2019)). In their opposition to the motion to amend, defendants only argue that plaintiffs fail to allege, and cannot allege, the second prong of this three-part test, — namely, that defendants took an adverse employment action against them. (See Defs.' Resp. at 2–3).

C. Adverse Employment Action

In the Proposed Second Amended Complaint, plaintiffs allege that defendants violated the FLSA and NYLL by "bringing a counterclaim after [plaintiffs] engaged in a protected activity." (Second Am. Compl. ¶¶ 108, 114). In opposition, defendants argue that their countersuit does not constitute an adverse employment action because their counterclaims "are not baseless and do not question the professionalism" of plaintiffs. (Defs.' Resp. at 5).

11

Additionally, defendants argue that they have "an appropriate and absolutely necessary obligation" to bring these counterclaims. (Id.)

### 1. Baseless Counterclaims Can Constitute an Adverse Employment Action.

To establish an adverse employment action, plaintiffs alleging retaliation under the FLSA must show that the challenged action "'well might have dissuaded a reasonable worker from making or supporting [similar] charge[s].'" Rodriguez v. National Golf Links of Am., 2020 WL 3051559, at *3 (quoting Mullins v. City of New York, 626 F.3d at 53) (alterations in original). To constitute an adverse employment action, "an employer need not necessarily take an action directly related to a person's employment." Ozawa v. Orsini Design Assocs., Inc., No. 13 CV 1282, 2015 WL 1055902, at *9–10 (S.D.N.Y. Mar. 11, 2015) (explaining that the FLSA, like Title VII, does not require retaliatory conduct to be associated with employment, so "the fact that Defendants' filing of a counterclaim occurred after the end of [plaintiff's] employment is immaterial"); see also Lore v. City of Syracuse, 670 F.3d 127, 163 (2d Cir. 2012) (explaining that "'[a] provision limited to employment-related actions would not deter the many forms that effective retaliation can take'") (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006)).[15]

"A counterclaim can constitute an adverse employment action." Pawlowski v. Kitchen Expressions Inc., 2017 WL 10259773, at *4 (citing Torres v. Gristede's Operating Corp., 628 F.

---

[15] Defendants in part argue that plaintiffs' claims for retaliation fail because they do not allege that the counterclaims harmed plaintiffs' professional reputations. (Defs.' Resp. at 5). Even assuming defendants are correct in their characterization of plaintiffs' claims, courts in this Circuit have held after Burlington Northern & Santa Fe Railway Co v. White that plaintiffs do not need to allege employment-specific harm but that other harm, "including the need to expend resources defending a potentially retaliatory lawsuit," may constitute an adverse employment action. Nunez v. Metropolitan Learning Inst., Inc., No. 18 CV 1757, 2021 WL 1176219, at *5 (E.D.N.Y. Mar. 29, 2021); cf. Robinson v. De Niro, No. 19 CV 9156, 2023 WL 4862772, at *48–49 (S.D.N.Y. May 25, 2023) (holding that a failure to provide a recommendation letter for graduate school could constitute an adverse employment action because "[i]n light of Burlington and Hicks, it appears that the strict approach to what constitutes an adverse employment action in the Title VII context—which focused on the action's impact to current or future employment—no longer applies").

Supp. 2d at 472–73). Courts in the Second Circuit have held that "baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibl[e] adverse retaliatory actions, even though they do not arise strictly in an employment context." Torres v. Gristede's Operating Corp., 628 F. Supp. 2d at 472 (citing Bill Johnson's Rests. v. NLRB, 461 U.S. 731, 740 (1983)); see also Rodriguez v. National Golf Links of Am., 2020 WL 3051559, at *3 (collecting cases); Romero v. Bestcare, Inc., No. 15 CV 7397, 2018 WL 1702001, at *5 (E.D.N.Y. Feb. 28, 2018) (collecting cases).[16] Baseless claims are those that fail as a matter of law or fact. See Kim v. Lee, No. 22-61, 2023 WL 2317248, at *3 (2d Cir. Mar. 2, 2023); see also Boutsikakis v. Tri-Borough Home Care, Ltd., No. 15 CV 5833, 2023 WL 3620646, at *9–10 (E.D.N.Y. Apr. 11, 2023) (finding that plaintiffs had established that defendant's counterclaim was baseless after recommending summary judgment in plaintiffs' favor on the counterclaim).[17]

While district courts in this Circuit agree that frivolous counterclaims can constitute an adverse action, courts in this Circuit are divided on whether a meritorious lawsuit filed with retaliatory animus could constitute an adverse employment action for an FLSA retaliation claim. See Kim v. Lee, 2023 WL 2317248, at *3 n.5 (declining to rule on the issue) (citing Nunez v. Metro. Learning Inst., Inc., 2021 WL 1176219, at *5, for the proposition that "whether a non-frivolous lawsuit may qualify as actionable retaliation under the FLSA is an open question in the Second Circuit"). Some courts have held that, even absent allegations of frivolity, a "[p]laintiff should be afforded discovery as to whether [defendant] harbored any pretext in interposing the [c]ounterclaim." Romero v. Bestcare, Inc., 2018 WL 1702001, at *6 (allowing plaintiff to add

---

[16] The Second Circuit itself has not explicitly adopted this holding and instead "assume[d], without deciding, that frivolous counterclaims could well dissuade a reasonable worker from pursuing an FLSA claim." Kim v. Lee, No. 22-61, 2023 WL 2317248, at *3 (2d Cir. Mar. 2, 2023) (citing Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447).
[17] The district court has not yet rejected or adopted this report and recommendation as of August 15, 2023.

retaliation claims without alleging baselessness because, "[r]ead liberally," allegations that "[d]efendants' sole purpose for filing [the] [c]ounterclaim was to retaliate against [plaintiff] for filing this instant action" "can be reasonably interpreted as a complaint that the [c]ounterclaim is baseless *or* would not have been pursued absent a retaliatory motive") (emphasis added) (internal citations omitted); cf. Rodriguez v. National Golf Links of Am., 2020 WL 3051559, at *5–6 (granting a motion to amend to add retaliation claims where plaintiff alleged that a non-frivolous lawsuit filed by a third party associated with defendants would not have been filed "had Plaintiff abandoned the instant action against Defendants").

Most courts in this Circuit, however, reject the notion that well-founded lawsuits and counterclaims can constitute adverse employment actions and hold that "[a] counterclaim cannot . . . constitute an adverse employment action unless it is frivolous." Pawlowski v. Kitchen Expression Inc., 2017 WL 10259773, at *5 & n.5 (noting that "only baseless claims [may] be considered retaliatory—even if they may be motivated in part by retaliatory animus"); see also Robinson v. De Niro, No. 19 CV 9156, 2023 WL 4862772, at *32 (S.D.N.Y. May 25, 2023) (explaining that "'[t]o sustain a claim of retaliation based on the filing of a lawsuit or a counterclaim, the plaintiff must allege [ ] that the lawsuit or counterclaim was filed both with a retaliatory motive and that it was filed without a reasonable basis in fact or law'") (internal quotation marks omitted and alteration in original) (quoting Kim v. Lee, 576 F. Supp. 3d 14, 31 (S.D.N.Y. 2021), aff'd, 2023 WL 2317248 (2d Cir. Mar. 2, 2023)); Figueroa-Torres v. Kleiner, No. 20 CV 4851, 2022 WL 768483, at *10 & n.10 (S.D.N.Y. Mar. 14, 2022) ("declin[ing] on the facts of th[e] case to depart from the majority position of courts in the Second Circuit that a litigation filing must be both made in bad faith and baseless to constitute a plausible adverse action for the purposes of a retaliation claim"); Kim v. Lee, 576 F. Supp. 3d at 31–35 (granting a

motion to dismiss plaintiff's complaint alleging retaliation in violation of the FLSA and NYLL, in part, because although plaintiff could be said to allege that the counterclaims were filed in an earlier action with a retaliatory motive, he did not allege enough facts to establish defendants' counterclaims were "objectively baseless"); Khalid v. DJ Shirley 1 Inc., No. 15 CV 5926, 2019 WL 325127, at *2 (E.D.N.Y. Jan. 25, 2019) (recommending denial of plaintiff's motion to amend to add retaliation claims because "Plaintiffs have not alleged that the [defendants'] state court actions [against plaintiffs] have been dismissed as baseless" and "[w]ithout the benefit of that determination, the Plaintiffs cannot allege, at this juncture, that the state court actions constitute an adverse employment action"), report and recommendation adopted, 2019 WL 885931 (E.D.N.Y. Feb. 21, 2019).[18]

In part, courts decline to find well-founded counterclaims and lawsuits sufficient to constitute an adverse action because they are concerned such a holding would impede the First Amendment rights of parties. Kim v. Lee, 576 F. Supp. 3d at 31; Pawlowski v. Kitchen Expression Inc., 2017 WL 10259773, at *5 & n.5 (explaining that the First Amendment "right to seek such redress is too important . . . to forbid a lawsuit, even when motivated by retaliatory animus") (citing Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. at 741). Thus, for purposes of considering this motion to amend, this Court must examine whether plaintiffs have sufficiently alleged that defendants' counterclaims are baseless.

---

[18] See also Rodriguez v. Parkash, No. 17 CV 3877, 2018 WL 11511602, at *4 (E.D.N.Y. May 7, 2018) (recommending denial of a motion to amend where a plaintiff only alleged that defendants' counterclaims were motivated by retaliatory animus without alleging more — namely, that they were baseless — because "[t]he unremarkable statement that [a] counterclaim came in response to Plaintiff's lawsuit does not create a plausible retaliation claim" since the filing of counterclaims "is [within] the normal course of federal litigation") (report and recommendation never adopted or rejected because the parties then pursued settlement).

## 2. Plaintiffs Fail to Allege Defendants' Counterclaims are Baseless.

In this case, defendants' counterclaims allege that Torres and Mr. Plaster injured defendants by misrepresenting the skill level of their workers, by misrepresenting that they would perform the work as agreed, and by breaking defendants' spray-painting machine. (Third-Party Compl. ¶¶ 48, 54–56). Defendants also seek indemnification and declaratory relief, related to their argument that they are not plaintiffs' employer. (Id. ¶¶ 58–74).

Plaintiffs' Proposed Second Amended Complaint alleges that defendants "violated the FLSA [and NYLL] by bringing [these] counterclaim[s.]" (Second Am. Compl. ¶¶ 108, 114). Plaintiffs contend that the facts surrounding defendants' counterclaims of fraud and negligent workmanship arose "nearly two years ago" and that defendants' decision to sue plaintiffs for these claims "was not made in good faith" and was instead made for "'leverage' purposes" and to "pressure Plaintiffs to drop this lawsuit." (Id. ¶¶ 62, 71–73). According to plaintiffs, "the counter lawsuit was only made after the court rejected Defendants' attempt to move for summary judgment in lieu of [an answer]." (Id. ¶ 72). Plaintiffs argue that these counterclaims will "negatively impact the ability of all Plaintiffs to obtain a recovery" by adding legal fees and by "creat[ing] tension between Torres and the remaining Plaintiffs." (Id. ¶ 75).

These allegations are sufficient to plead retaliatory animus because courts tend to find plaintiffs have sufficiently pleaded retaliatory animus where they allege that defendants filed counterclaims or additional lawsuits after the failure of prior efforts to resolve the case. See, e.g., Nunez v. Metro. Learning Inst., Inc., No. 18 CV 1757, 2019 WL 5457731, at *2 (E.D.N.Y. Oct. 24, 2019) (finding plaintiffs plausibly pled retaliatory motive by alleging that defendants sued them in a baseless state court action for "'leverage,'" "'to punish [plaintiff]'" and to recover on eight-month old claims just four months after settlement discussions fell apart in the federal

16

lawsuit) (internal citations omitted) (this case involved the same plaintiff's counsel). Since plaintiffs here claim defendants sued to recover for two-year old claims only after the district court rejected defendants' motion for summary judgment, they have plausibly alleged defendants acted with retaliatory animus.

However, while plaintiffs have alleged retaliatory animus, they do not allege in their Proposed Second Amended Complaint that defendants' counterclaims are baseless. Nowhere in the Proposed Second Amended Complaint do plaintiffs argue that defendants' counterclaims fail as a matter of law or fact.[19] Although plaintiffs refer to defendants' counterclaims as "baseless" in their reply memorandum, they continue to argue primarily that defendants filed the counterclaims in bad faith rather than based on their "tru[e] belie[f] that they had been damaged." (Pls.' Reply at 2).[20] Plaintiffs fail to allege that defendants were not actually damaged by plaintiffs' actions such that the counterclaims would be baseless. As stated above, most courts in this Circuit generally do not allow plaintiffs to add claims of retaliation without allegations that defendants' counterclaims were baseless. Looking only to the four corners of the Proposed Second Amended Complaint, the Court finds plaintiffs have failed to include any allegations related to baselessness, rendering the retaliation claims as currently pleaded futile. Therefore, the Court respectfully recommends that plaintiffs' motion to amend be denied at this time.

---

[19] Although plaintiffs have filed a premotion conference request to dismiss defendants' counterclaims (ECF No. 49), that motion is not before this Court at this time. In fact, that request was not even filed on the docket until after the instant motion to amend was fully briefed. Further, the district court has stated that it will set a briefing schedule for the anticipated motion to dismiss after this Court determines the issue of the motion to amend. Therefore, the Court declines to take judicial notice of the arguments in plaintiffs' pre-motion conference letter request.

[20] The Court does not consider plaintiffs' reply's conclusory characterization of defendants' counterclaims as "baseless" sufficient because plaintiffs did not allege the same in their second amended complaint. See Max Impact, LLC v. Sherwood Grp., Inc., 2012 WL 3831535, at *4.

CONCLUSION

Accordingly, the Court respectfully recommends that plaintiffs' motion to amend be denied at this time without prejudice to renew at a later time.[21]

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specific time waives the right to appeal the District Court's Order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: August 15, 2023
Brooklyn, New York

*Cheryl L. Pollak*
CHERYL L. POLLAK
United States Magistrate Judge
Eastern District of New York

---

[21] See Khalid v. DJ Shirley 1 Inc., 2019 WL 325127, at *2 (denying a motion to amend to add a claim of retaliation as "at best, premature" where no determination had yet been made as to whether the defendants' state court actions against plaintiffs were baseless).